REGINA H. MEREDITH AND CLIFFORD W. SNEDEKER, PLAINTIFFS-RESPONDENTS, v. MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANT-APPELLANT,

GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, INTERVENOR-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 14, 1971—Decided July 2, 1971.

Before Judges CONFORD, KOLOVSKY and CARTON.

*Mr. Harvey L. Stern,* County Counsel, argued the cause for appellant.

*Mr. Harvey Levine,* Deputy Attorney General, argued the cause for Intervenor-Respondent (*Mr. George F. Kugler, Jr.,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

Plaintiffs filed Statement in Lieu of Brief.

PER CURIAM. The judgment on appeal is affirmed essentially for the reasons set forth in the opinion of Judge Moore. 117 *N. J. Super.* 379; 59 *N. J.* 530.

CONFORD, P. J. A. D. (dissenting). My study of the legislative history and factual background of this matter leads me to the following conclusions:

1. The Board of Freeholders had the right to fill the vacancy in the position which arose with the resignation of Mr. Naples as of September 1, 1970.

2. After the expiration of the full five-year Naples term resulting from his designation by the Freeholders on August 6, 1968 all succeeding holders of full five-year terms will be subject to designation only by the Governor, with the advice and consent of the Senate; and this will be true of appointees to all vacancies arising within any such terms.

In arriving at the foregoing conclusions, the first of which would dictate reversal in the instant matter, I follow the principle that if legislative language is clear and unambiguous, and the result so indicated is not absurd, totally unreasonable or plainly contrary to a manifest legislative plan or purpose, the judiciary should uphold it notwithstanding a different result might appear to the court more reasonable, logical, conventional or desirable.

In respect of the first conclusion, the amendatory statutory language in relation to the filling of vacancies unambiguously requires that vacancies shall be filled "in the same manner as the original appointment to such office *was* made * * *" (emphasis added). As is developed later in this opinion, for another purpose, "vacancies" are referable to the full term in the course of which the vacancy arises. Where, as here, the original appointment to the full term was in fact made by the Board of Freeholders, rather than by the Governor, the same body is to fill vacancies, but only during the five-year term first created and in relation to which the vacancy arose. That the legislature intended the literal import of the amendatory language quoted is supported by the contrasting content of the original act before amendment which called for filling of vacancies "in the same manner as original appointments *are* made" (emphasis added), i. e., in the same manner as original appointments are generally made.

The language of the amendment, moreover, is perfectly tailored to the scheme of the act in providing both a general and an alternate method of making a first appointment to the office after adoption of a resolution by the Board of Freeholders for the creation of the office in the county. The directive for filling the vacancy in the same manner "as the

original appointment * * * was made," in the light of the foregoing, cannot in my view be sensibly regarded as meaning anything other than that if the Governor made the original appointment for the very first term he fills the vacancy; if the Freeholders did, they fill it. I see nothing absurd, anomalous or plainly contrary to any general scheme or plan underlying this legislation in enforcing this plain statutory expression. Doing so merely means that the Board of Freeholders, if the original appointer, also fills all vacancies arising during the first five-year term. Thereafter all appointments, whether to regular terms or vacancies, are filled by the Governor (as is more particularly demonstrated hereinafter).

The fact that the office may be properly regarded as a state rather than a local position is not particularly significant, as against my first conclusion hereinabove. The Legislature already discounted that consideration somewhat in giving the Freeholders the original alternate appointive power. There is no greatly significant additional divergence therefrom in honoring the legislative direction to add thereto the power of appointment to vacancies arising during the original five-year term after creation of the post in the county.

In respect of my second conclusion — that the appointive power of the Board of Freeholders does not survive the expiration of the initial five-year term — I point out that the act is devoid of any provision specifically giving the Freeholders the general power to appoint to successive full terms after the expiration of the first full term. In the absence thereof the presumption should be indulged, particularly in the case of a state office such as this, that the general designation of the Governor and Senate as the normal appointive powers is applicable to appointments to all such successive full terms.

Defendant relies for a more extended power in the Freeholders upon the language in § 1 of the 1953 amendment (Ch. 444):

* * then the said board of chosen freeholders of the county shall appoint some * * * person to fill such office for a term of 5 years from the date of appointment *and until the successor of such person is in the same manner appointed* and shall have qualified. (Emphasis added.)

This does not mean that if the original term holder was appointed by the Freeholders the holder for a successive term must also be. The Legislature would not be expected to be purporting to deal generally with the subject of appointments to full terms by a passing allusion in the course of an expression describing the term of an appointee of the Board of Freeholders — particularly when the appointment is of the probably rare category of contingency upon initial gubernatorial default of appointment. The contrary argument by the defendant aptly deserves the characterization of calling for a totally unreasonable construction, contrary to the general scheme of the act as a whole.

Moreover, the most that could literally be derived from the language relied upon is that the Freeholders would have the appointment of the second full term (and only that), and only where there was a preceding vacancy in the first term to fill which the Freeholders had made an appointment. But I do not accept even that construction as sound.

Once it is accepted that the Freeholders take nothing in support of their argument for total erasure of gubernatorial power after initial default of appointment from the *italicized* statutory language discussed next hereinabove, the remaining basis for their purported argument to that effect collapses. That basis is the contention that the statutory language in relation to vacancies gives permanent appointive power to the Freeholders as to any vacancy arising at any time. In the first place, the language would literally support only a power to fill *vacancies* in later terms, not to make appointments to full terms — itself a most anomalous result.

But beyond that, it is entirely clear to me that in saying that any vacancy "shall be filled in the same manner as

the original appointment to such office was made" the Legislature meant by "original appointment" the appointment for that full five-year term *in respect of which the particular vacancy arose.* Thus, as indicated in Conclusion 1, above, where the first five-year term was in fact filled by the Freeholders a vacancy *in that term* is to be filled by the Freeholders. But in relation to subsequent five-year terms, all of which, as is above demonstrated, must be filled by the Governor, vacancies in the course of such terms are to be filled by the Governor as the maker of the "original appointments" to such terms.

I would reverse and hold the Board of Freeholders entitled to fill the vacancy here immediately involved.