605 A.2d 265

IN THE MATTER OF PROSECUTOR OF MIDDLESEX COUNTY, RESPONDENT-APPELLANT, AND PBA LOCAL 214, MIDDLESEX COUNTY PROSECUTOR'S DETECTIVES AND INVESTIGATORS, CHARGING PARTY-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted January 14, 1992—Decided April 8, 1992.

334

Before Judges ANTELL, BAIME and THOMAS.

*John J. Hoagland,* Middlesex County Counsel, attorney for respondent-appellant (*Edward J. Santoro, Jr.,* on the brief).

*Zazzali, Zazzali, Fagella & Nowak,* attorneys for charging party-respondent (*Paul L. Kleinbaum,* on the brief).

*Robert E. Anderson,* General Counsel for respondent, Public Employment Relations Commission (*Don Horowitz,* Deputy General Counsel, on the brief).

The opinion of the court was delivered by

THOMAS, J.S.C., temporarily assigned.

The Prosecutor of Middlesex County appeals from a decision of the Public Employment Relations Commission (PERC) holding that appellant was in violation of the New Jersey Employer–Employee Relations Act and ordering remedial action. After a careful review of the record, we agree PERC correctly applied the Act and affirm.

On June 1, 1989, PBA Local 214, Middlesex County Prosecutor's Detectives and Investigators filed an unfair practice charge against appellant with PERC. Respondent alleged that appellant violated the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1, *et seq.*, specifically subsections 5.4(a)(1) and (a)(5), when it unilaterally stopped granting newly-hired employees credit for longevity and vacation and sick leave benefits based on prior governmental employment.

Since the early 1970s, appellant's employees have been entitled to credit for prior governmental service. The credit was used to calculate vacation and sick leave allowances and longevity payments. Until 1980, the credit was mandated by statute. However, we declared the statute unconstitutional in *Kenney v. East Brunswick Tp.*, 172 *N.J.Super.* 45, 410 *A.*2d 713 (App.Div. 1980).[1] The County then passed a new resolution on September 18, 1980 again granting credit for prior governmental service to appellant's employees which was incorporated into the 1980–1981 agreement between appellant and respondent.

On July 24, 1987, respondent filed a grievance alleging that appellant had violated the collective agreement by failing to provide the prior service credit to certain employees. This

---

[1] *Kenney* held that the statute, *N.J.S.A.* 40A:9–5, violated the bar against "special legislation." *Id.* at 52–53. However, the issue of granting credit for prior governmental service remained subject to negotiation. *See City of Paterson v. Paterson Police P.B.A. Local # 1*, 184 *N.J.Super.* 591, 598–599, 446 *A.*2d 1244 (App.Div.1982), *appeal dismissed*, 93 *N.J.* 320, 460 *A.*2d 710 (1983) (where we confirmed a post-*Kenney* arbitration award granting credit for prior governmental service).

grievance was based on claims that some employees were hired without being given prior service credit and some were given less credit than they thought they deserved. An arbitration hearing was held on January 4, 1988, and on January 25, 1988, the arbitrator issued an award. The award included the finding that appellant must grant the credit, pursuant to the 1980 resolution and bargaining agreement. This award was appealed and affirmed. On February 27, 1989, the parties entered into a written agreement to implement the arbitrator's award which included calculations for specific employees of retroactive vacation and sick days as well as longevity payments.

The 1980 provision was carried over into the 1988–1989 collective agreement as article 20:

## XX. SAVINGS CLAUSE

It is mutually understood and agreed that all benefits currently enjoyed by employees shall remain in effect and become a part of this Agreement, including any and all verbal or written agreements pertaining to working conditions made with the Middlesex County Prosecutor.

It is agreed that all general fringe benefits given to all other County employees by General County Policy, will also be granted to the employees covered by this Agreement.

The second paragraph of Article 21 of the parties' 1980–1981 collective agreement is identical to the second paragraph of Article 20 of the 1988–1989 agreement.

On March 16, 1989, the County passed a resolution prospectively rescinding the 1980 resolution granting the prior service credit. Appellant implemented this resolution without first negotiating the rescission of the credit with respondent.

After filing the unfair practice charge, the parties attempted to settle their differences without success. A formal complaint was filed and appellant answered contending it had the right to stop granting credit and that no employees had lost any benefits. A hearing examiner, after review, issued his report and recommendations. He found appellant violated *N.J.S.A.*

34:13A–5.4(a)(1) and (a)(5) when it unilaterally stopped granting newly hired employees credit for prior governmental service.

On August 15, 1990, PERC issued its decision incorporating the hearing examiner's findings and conclusions. PERC ordered appellant to reinstate the credit for prior employees represented by respondent, apply credit to all eligible members and negotiate with respondent regarding any future attempts to rescind credit.

The hearing examiner found that the credit was negotiable between the appellant and respondent and said:

> Here the credit directly affects the employees' welfare, was not fully or partially preempted, and negotiations would not have significantly interfered with the determination of governmental policy. The County's purpose for passing the March resolution "in the public interest" was economic. The Prosecutor unilaterally implemented that resolution but offered no evidence or argument to suggest that such implementation was necessary to deliver its governmental services. Rather, the facts show that the dominant concern here was economic, and changes made in employee benefits for economic reasons must be negotiated with the majority representative prior to implementation. *See Piscataway Tp. Bd. Ed. v. Piscataway Tp. Principals Assoc.*, 164 *N.J.Super.* 98, 101 [395 *A.*2d 880] (App.Div.1978); *Sayreville Bd. Ed.*, P.E.R.C. No. 83–105, 9 *NJPER* 138, 141 (¶ 14066 1983).

In addition, PERC held:

> In March 1989, the Freeholder Board passed a resolution rescinding its 1980 resolution granting employees credit for prior governmental service. The Prosecutor had granted prior credit in conformity with the 1980 resolution and unilaterally ended that practice in conformity with the 1989 resolution. The Freeholder Board's action may have motivated the employer's action, but it did not preempt its obligation to negotiate before changing terms and conditions of employment. *See State v. State Supervisory Employees Ass'n.*, 78 *N.J.* 54 [393 *A.*2d 233] (1978) (only statutes and regulations preempt negotiations); *City of Vineland*, P.E.R.C. No. 90–105, 16 *NJPER* 317 (¶ 21130 1990) (ordinances do not preempt).

The unfair labor practice was appellant's failure to maintain terms and conditions of employment, a violation of *N.J.S.A.* 34:13A–5.4(a)(1) and (a)(5), which state:

> a.  Public employers, their representatives or agents are prohibited from:
>
> (1) Interfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by this act.
>
> . . . .

(5) Refusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit, or refusing to process grievances presented by the majority representative.

Thus, PERC ordered appellant to reinstate the credit.

It is appellant's contention that its action was required in order to carry out the mandate of the March 1989 Freeholder Board resolution rescinding credit. This mandate by the Freeholders, in effect, directed appellant to breach a term of an existing agreement between appellant and its employees. Appellant further contends it cannot negotiate a change in credit because to do so would place it in violation of the Freeholder Board's decree. In doing so, appellant relies upon *N.J.S.A.* 40:20–1, which states in its first paragraph:

The property, finances and affairs of every county shall be managed, controlled and governed by a board elected therein, to be known as "the board of chosen freeholders of the county of .......... (specifying name of county)", and the executive and legislature powers of the county shall be vested in that board of chosen freeholders, except where by law any specific powers or duties are imposed or vested in a Constitutional officer.

Appellant maintains that powers reserved for the freeholders cannot be usurped by any other board or official, including appellant.

However, appellant fits into the exception found in the statute. Appellant, as a county prosecutor, is a Constitutional officer. *See N.J. Const. of 1947* art. VII, § 2, para. 1. Relevant is *N.J.S.A.* 2A:158–7, which states:

All necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws shall, upon being certified to by the prosecutor and approved, under his hand, by a judge of the superior court or of the county court for such county, be paid by the county treasurer whenever the same shall be approved by the board of chosen freeholders of such county. The amount or amounts to be expended shall not exceed the amount fixed by the board of chosen freeholders in its regular or emergency appropriation, unless such expenditure is specifically authorized by order of the assignment judge of the superior court for such county.

Thus, this statute gives appellant the power to seek funding above the appropriation allocated by the freeholders, which could include funding for the credit. This is contrary to appel-

lant's statement: "The Prosecutor cannot create financial fringe benefits for his employees".

We were previously confronted with this problem in *In re Mercer Cty. Bd. of Chosen Freeholders v. Mercer Cty. Prosecutor,* 172 *N.J.Super.* 411, 412 *A.*2d 809 (App.Div.1980). In that case, the Teamsters Union filed a petition with PERC, seeking a certification that it was the representative of clerical, stenographic and technical employees of the Mercer County Prosecutor. PERC determined that the prosecutor, rather than the county board of chosen freeholders, was the public employer for the purpose of collective negotiations under the New Jersey Employer–Employee Relations Act. *Id.* at 413, 412 *A.*2d 809. The Appellate Division affirmed, stating:

> [P]rosecutors are authorized by statute to incur necessary expenses in the conduct of their offices and if the freeholders do not honor the prosecutor's certification of his expenses they may be ordered to pay the sums authorized by the assignment judge for the county. *N.J.S.A.* 2A:158[-]7, saved from repeal by *N.J.S.A.* 2C:98[-]3. See, also, *N.J.S.A.* 2A:157[-]18 and [-]19. The language of the statute indicates a legislative intent to place the prosecutor in a dominant position with relation to the freeholders for the purpose of maintaining his independence and effectiveness. *In re Application of Bigley,* 55 *N.J.* 53, 56 [259 *A.*2d 213] (1969).

*Id.,* 172 *N.J.Super.* at 413–414, 412 *A.*2d 809.

Thus, appellant is actually a separate employer from the freeholders, and as a separate public employer, it is appellant who must negotiate with respondent. As the public employer, appellant has the duty under the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1, *et seq.,* to, among other responsibilities, maintain terms and conditions of employment and to bargain in good faith with respondent. Since appellant failed to negotiate any change in the existing agreement with respondent, rescinding the credit was an illegal unilateral change.

Thus, appellant's argument that it had no alternative but to implement the resolution is incorrect. His specific powers and duties to run his office place him "in the dominant position with

relation to the freeholders for the purpose of maintaining his independence and effectiveness."

The PERC decision is affirmed.