IN THE MATTER OF THE APPLICATION OF BRUCE M. SCHRAGGER, PROSECUTOR OF MERCER COUNTY, FOR THE APPOINTMENT OF ADDITIONAL INVESTIGATORS, DETECTIVES AND ASSISTANT PROSECUTORS AND THE INCURRING OF OTHER EXPENSES.

BRUCE M. SCHRAGGER, PETITIONER-RESPONDENT, v. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MERCER, RESPONDENT-APPELLANT.

Argued April 5 and 6, 1971—Decided May 10, 1971.

*Mr. Harvey L. Stern,* Mercer County Counsel, argued the cause for appellant (*Mr. Stephen J. Zielinski,* on the brief).

*Mr. Bruce M. Schragger,* Mercer County Prosecutor, argued the cause *pro se.*

*Mr. Geoffrey Gaulkin,* Hudson County Prosecutor, *amicus curiae,* argued the cause *pro se.*

PER CURIAM. The Mercer County Prosecutor filed a petition with the Assignment Judge for that County requesting the Assignment Judge to authorize the appointment of additional detectives, investigators, and assistant prosecutors, and to set salaries for existing and new personnel. After a hearing on notice to the Board of Chosen Freeholders (herein

Board), the Assignment Judge entered an order approving the hiring of additional personnel and setting salaries and salary ranges. The County appealed, and we certified the appeal before argument in the Appellate Division.

This case is controlled by *In re Bigley*, 55 *N. J.* 53 (1969), where we concluded, upon a full review of the history of *N. J. S. A.* 2A:158-7, that the Legislature thereby committed to the Assignment Judge the authority to require a board of chosen freeholders to meet the needs of the prosecutor not provided for by the board in its regular or emergency appropriations for the prosecutor's office. As was there pointed out, the Legislature has adhered to that policy for almost 100 years. Speaking of *N. J. S. A.* 2A:158-7 and its antecedents, we said in *Bigley, supra,* 55 *N. J.* at 56:

In short, the Legislature, confronted with the question whether the freeholders should have the last word with respect to how much money should be provided for the discharge of the prosecutor's duties, decided the ultimate determination should rest with a judicial officer. Perhaps the Legislature feared the independence or effectiveness of the prosecutor could be compromised if local government controlled the resources of his office. Or perhaps the Legislature believed the judicial officer would be more expert in evaluating the manpower and other demands of the criminal business of the county. Whatever the precise grounds, the legislative determination was clear.

We add that last year there was defeated a bill (A 1126) introduced after *Bigley* and designed to amend *N. J. S. A.* 2A:158-7 to give the board of freeholders the final say in the matter.

We pointed out in *Bigley* that, although the Assignment Judge did not sit in review of the action or inaction of the board of chosen freeholders but rather made an original determination of the prosecutor's needs, it nonetheless was appropriate for the prosecutor to present his case to the freeholders for their initial decision. We note that here the prosecutor followed that course. It was after the Board refused the prosecutor's request that the prosecutor turned to the Assignment Judge, who entered an order upon a finding that

the prosecutor could not meet the imperative duties of his office without the relief which was ordered.

The Board advances several propositions which were not advanced in *Bigley* and which require brief mention.

As we pointed out in *Bigley*, the Assignment Judge acts under *N. J. S. A.* 2A:158–7 as a legislative agent rather than as a judicial officer in deciding upon the needs of the prosecutor. Accepting that premise, the Board contends the statute is unconstitutional because it attempts to delegate legislative power to the judiciary. The reference is to *Art.* III, ¶ 1 of the *Constitution of 1947*, which reads:

> The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.

The question of course is not whether the judicial branch has on its own sought to claim and exercise a power allocated by the Constitution to the legislative branch. It is the Legislature which has asked the judicial branch to assume the responsibility of passing upon the prosecutor's needs. Nor has the Legislature attempted to delegate a power which is nondelegable. The Legislature need not itself fix an unalterable number of assistant prosecutors or detectives or investigators or other personnel of the prosecutor's office or their salaries. The Legislature may delegate to others the task of deciding the ultimate needs of a prosecutor. The question then is whether the Legislature may choose an officer of the judicial branch as the delegee of that power, and whether the judiciary may accept the legislative delegation.

It has been held in sundry situations that the Legislature may designate judicial officers to act as legislative agents. See *Bergen County Sewer Authority v. Little Ferry*, 5 *N. J.* 548, 552 (1950); *Ross v. Board of Chosen Freeholders of Essex County*, 69 *N. J. L.* 291 (E. & A. 1903); *New Jersey Zinc Co. v. Sussex County Board of Equalization of*

*Taxes,* 70 *N. J. L.* 186 (Sup. Ct. 1903); *State v. Wildwood,* 83 *N. J. L.* 188 (Sup. Ct. 1912); *Murray v. Murray,* 7 *N. J. Super.* 549 (Law Div. 1950). Although the judiciary is not constitutionally obliged to accept these delegations and may decline to do so because of incongruity or undue burden, *Massett Building Co. v. Bennett,* 4 *N. J.* 53, 61 (1950), neither consideration would warrant a refusal to act in the present setting. The judiciary is directly concerned with the effective operation of the prosecutor's office, for although law enforcement is the special responsibility of the executive branch and in that aspect of his work the prosecutor represents that branch of government, nonetheless the judiciary is responsible for the prompt disposition of the criminal and *quasi*-criminal business of the State in the courts, and in that aspect of the prosecutor's duties he is an officer of the Court and subject to its direction. The Court is therefore concerned on its own account with the ability of the prosecutor to meet the demands upon his office. Hence it is quite appropriate for the Legislature to ask a judicial officer to pass upon the monetary requirements of the prosecutor, and equally appropriate for the judicial branch to accept the delegation of that authority. With respect to the Board's further point that *N. J. S. A.* 2A:158–7 fails to set forth a standard for the exercise of the delegated power, it is enough to say that the statute is as precise and revealing as the subject reasonably permits.

██ Next, the Board contends the prosecutor failed to exhaust his "administrative remedy" before turning to the Assignment Judge for relief. Reference is made to the New Jersey Employer-Employee Relations Act, *N. J. S. A.* 34:13A–1, *et seq.,* which provides for collective negotiations between governmental employers and employees. The detectives and investigators of the prosecutor's office were organized under that act and were engaged in negotiations with the Board with respect to salaries and working conditions when the present application was made to the Assignment Judge. The New Jersey Employer-Employee Relations Act

does not dilute the responsibility of the Assignment Judge to see to it that the prosecutor's needs are met. The prosecutor is not a party to the negotiations under that statute. Nor did the Assignment Judge attempt to decide what the parties to those negotiations should do. Rather the Assignment Judge was concerned only with fixing salaries which he found to be necessary to enable the prosecutor to man his office under prevailing conditions. The New Jersey Employer-Employee Relations Act did not transfer the Assignment Judge's role to the Board and the negotiating employee unit. The Assignment Judge correctly held his responsibility remained undiminished. His action, of course, does not bind the parties to the negotiating procedure except that those parties may not negotiate away the prosecutor's capacity to perform the duties of his office as assured by the order of the Assignment Judge.

█ Finally, the Board contends *N. J. S. A.* 2A:157–18 of the County Detectives and County Investigators Act commits to the Board the final approval as to the salaries to be paid to county detectives and county investigators. As we noted in *Bigley, supra,* 55 *N. J.* at 59, that statute expressly disavowed in the very next section, *N. J. S. A.* 2A:157–19, an intent to restrain the application of *N. J. S. A.* 2A:158–7 under which the Assignment Judge was here called upon to act.

The order is accordingly affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For reversal*—None.