IN THE MATTER OF BERGEN COUNTY BOARD OF CHOSEN FREEHOLDERS, APPELLANT, v. BERGEN COUNTY PROSE-CUTOR, SUPERIOR OFFICERS OF COUNTY DETECTIVES AS-SOCIATION OF BERGEN COUNTY AND STATE OF NEW JER-SEY, RESPONDENTS.

**Superior Court of New Jersey**
Appellate Division

Argued January 8, 1980—Decided February 28, 1980.

364

Before Judges CRANE, MILMED and KING.

*Leon B. Savetsky* argued the cause for appellant.

*Roger W. Breslin, Jr.*, Bergen County Prosecutor, argued the cause for respondents Bergen County Prosecutor and Superior Officers of County Detectives Association of Bergen County.

*Janice S. Mironov*, Deputy Attorney General, argued the cause for respondent State of New Jeresy (*John J. Degnan*, Attorney General, attorney; *Stephen Skillman*, Assistant Attorney General, of counsel; *Melvin E. Mounts*, Deputy Attorney General, on the brief).

*James F. Schwerin*, Deputy General Counsel, argued the cause on behalf of Public Employment Relations Commission (*Sidney H. Lehmann*, General Counsel, attorney).

*Martin Verp*, Passaic County Counsel, filed a brief on behalf of County of Passaic, *amicus curiae* (*Herman Osofsky*, Assistant County Counsel, on the brief).

The opinion of the court was delivered by

CRANE, P. J. A. D.

Acting on a petition filed by the Superior Officers of County Detectives Association of Bergen County, the Public Employment Relations Commission determined in a decision issued May 26, 1978 (which dealt also with the petition of Teamsters Union Local 102 on behalf of the clerical, stenographic and technical employees of the Mercer County Prosecutor) that the county prosecutor rather than the county board of freeholders was the public employer for the purpose of labor relations and collective

negotiations of the superior officers in the county prosecutor's Office. The Bergen County Board of Chosen Freeholders appeals.

The parties presented the facts in the form of a stipulation agreed to by the prosecutor, the freeholders and the Detectives Association in response to questions submitted by the Commission's hearing officer. The stipulation stated in part that:

In respect to discharge, discipline, evaluation, demotion and the establishment of work rules and work assignments, the prosecutor has the final authority as to the implementation of a decision.

*HIRE*: Recommendations to hire, discharge, discipline, promote, demote, assign, implement work rules, vacation schedules, are made by the Chief of Detectives to the Prosecutor after consulting with the captains and lieutenants. Prospective employees are interviewed by a team of supervisors, either detectives or clerical, who submit in writing, recommendations to hire or not. A written recommendation is submitted by the Chief of Detectives to the Prosecutor to hire or not. The Prosecutor either hires or does not.

The Prosecutor may fix the salaries of County Detectives and County Investigators at amounts in excess of the minimum amounts provided in *N.J.S.A.* 2A:157–1 et seq. Once the prosecutor fixes the salary, the salary figure will be either approved or rejected by the Board of Chosen Freeholders and the Prosecutor may avail himself of any remedy afforded in the *Bigley* and *Schragger* decisions.

*PROMOTIONS*: Promotions are made by the Prosecutor on the recommendation from the Chief of Detectives with consultation of the management staff. The salaries are already fixed for the position.

*OVERTIME POLICY*: The collective agreement between the County of Bergen and PBA Local 221 specifies that detectives and investigators will be paid $500.00 per year in lieu of all overtime hours beyond the forty-hour work week. In respect to the number of overtime hours that will be worked by these men, the Prosecutor makes the final decision.

*VACATION SCHEDULES*: In Article 12 of the collective agreement between the County of Bergen and PBA Local 221, it indicates that vacation schedules should be scheduled in a uniform manner in accordance with seniority, where practicable subject only to the requirements of the department. The actual scheduling is implemented by the Prosecutor.

*WORK HOURS*: The collective agreement indicates that there will be a forty-hour work week but the number of hours worked by these men is determined by the Prosecutor.

. . . . . . . .

The Prosecutor has established internal procedures for implementing decisions in respect to Hire, Discharge, Discipline, Evaluation, Promotion, Demotion, work Rules, Work Assignments, the number of Overtime Hours, the scheduling of Vacation Time and the number of Work Hours. Civil Service Rules and Regulations are followed in the Hire, Discharge and Promotion of employees where applicable.

Lieutenants, Captains and the Chief all have input in the decision-making process with the Prosecutor making the final decision.

. . . . . . . .

The preliminary budget is prepared for the Prosecutor by the Chief of Detectives. Requirements are determined by the Chief of Detectives of the needs of the office based on a consultation with the staff. The final budget is submitted by the Prosecutor to the Board of Freeholders for approval. Discussions are held on the budget with a designated Freeholder, County Administrator, the Prosecutor and the Chief of Detectives prior to the final passage by the Board.

The County Treasurer signs pay checks. These funds are taken from the salary account of the Prosecutor's Office's budget which is appropriated by the Board of Freeholders.

In reaching its determination, the Commission adopted the decision of the Director of Representation. The Director reached his conclusion based on an analysis, from a labor relations and collective negotiations perspective, of the relevant statutory enactments concerning county prosecutors, court decisions construing the rights and responsibilities of prosecutors and counties, and various traditional labor relations indicia associated with identifying public employers for collective negotiations purposes. The Commission found that the prosecutor had authority to hire, promote, evaluate, discipline, assign, set work rules for and discharge the employees in question; that he had authority to obtain funding for office operations and personnel over and above the amounts allocated by the county; that the unique status of the office of county prosecutor has been judicially recognized; that the financial burdens related to the position are imposed on the county, and that county prosecutors are appointed by the Governor and are answerable only to him through the Attorney General for the conduct of their offices. The Commission thus concluded that the county prosecutor was

the employer of the superior officers for the purpose of collective negotiations.

On this appeal the freeholders contend that the Legislature has placed the responsibility for fixing the salaries of county employees in their hands; that the prosecutor's detectives are county employees for payroll purposes; that the county prosecutor is not within the statutory definition of "public employer" under *N.J.S.A.* 34:13A · 1 *et seq.*, and that the PERC determination expands the scope of the statute, *N.J.S.A.* 34:13A 1 *et seq.*, without legislative authority.

We affirm.

The freeholders rely principally on *Dunne v. Fireman's Fund Am. Ins. Co.*, 69 *N.J.* 244 (1976), which held that prosecutor's detectives were "employees" of the county within the meaning of a policy of insurance affording liability coverage for county employees. *Cf. Cashen v. Spann*, 66 *N.J.* 541 (1975), *cert.* den. 423 *U.S.* 829, 96 *S.Ct.* 48, 46 *L.Ed.*2d 46 (1975), which held county detectives to be agents of the state and not the county. In the *Dunne* opinion prosecutor's detectives were characterized as occupying a hybrid status with respect to whether they were county employees or state employees. Since the case dealt with the narrow issue of the status of the detectives for insurance purposes, we do not find the opinion either controlling or instructive. We note also that in *Pros. Det. Essex Cty. v. Hudson Bd. Freeholders*, 130 *N.J.Super.* 30, 45 (App.Div.1974), certif. den. 66 *N.J.* 330 (1974), we suggested that the matter of compensation for the extension of the work day might be the subject of negotiation between the detectives and the board of freeholders. But that case did not deal with the question presented to us on this appeal.

In adopting the New Jersey Employer-Employee Relations Act, *N.J.S.A.* 34:13A 1 *et seq.*, the Legislature expressed a policy that it was in the public interest to prevent or promptly settle labor disputes both in the private and public sector. *N.J.S.A.* 34:13A 2. In order to carry out this policy it created

the New Jersey Public Employment Commission with the authority to make policy, establish rules and regulations, settle disputes and implement fully the provisions of the Act. *N.J. S.A.* 34:13A-5.2. The Commission is also empowered to resolve questions concerning representation of public employees and which unit of employees is appropriate for collective negotiation. *N.J.S.A.* 34:13A 6. In carrying out these functions we have no doubt that it was the legislative intent to vest the Commission with the authority to determine the appropriate officer or authority with whom the employees' representatives were entitled to engage in collective negotiations.

▓ In determining the scope of the authority of the Commission we are required to acknowledge the remedial purpose of the legislation and accord the language of the statute a liberal interpretation. *State v. Meinken*, 10 *N.J.* 348, 352 (1952); *Carianni v. Schwenker*, 38 *N.J.Super.* 350, 361 (App.Div.1955). Thus, we reject the narrow interpretation of the term "employer" urged by the freeholders in interpreting *N.J.S.A.* 34:13A 1.

▓ In reviewing a *quasi*-legislative determination such as that reached by the Commission, our function is not to substitute our judgment for that of the administrative agency. *Flanagan v. Civil Service Dep't*, 29 *N.J.* 1, 12 (1959). Our function is to examine the record with a view to determining whether the decision is within the legislatively delegated authority and whether it is reasonable rather than arbitrary or capricious. And where, as we perceive it to be here, agency expertise is involved, we should accord due deference to the policy views of the agency. *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599 (1965).

▓ The fact that the salary of the detectives is paid by the freeholders is not necessarily determinative as to who is the employer for the purpose of a particular statute. See *In re Brennan*, 126 *N.J.Super.* 368 (App.Div.1974). Nor are common law standards determinative. *Provident Inst. for Sav. in Jersey City v. Employment Secur. Div.*, 32 *N.J.* 585, 590 (1960). We are

required to apply a broad and flexible approach to reviewing the Commission's determinations. Thus, although the issue is debatable, we cannot say on the record before us that the decision is in any sense arbitrary or unreasonable. See *State v. Prof. Ass'n of N. J., Dept. of Ed.*, 64 *N.J.* 231, 259 (1974). On the contrary, we are fully satisfied that the determination of the Commission has adequate support in the stipulated facts and is a rational solution to a difficult problem.

Affirmed.